Spring Term 1839.

McIsaacs vs Hobbs.

REPLEVIN.

## McIsaacs vs. Hobbs.

[Mr. Owsley and Mr. Chapeze for appellant: Mr. C. A. Wickliffe for appellee.]

FROM THE CIRCUIT COURT FOR NELSON COUNTY.

June 15.

Judge MARSHALL delivered the Opinion of the Court.

The action and pleadings.

JOSHUA HOBBS, as trustee of Catharine Higdon, for whose benefit several slaves and other property had been devised by her father, Jacob Cartmel, to Hobbs and others, brought this action of replevin against John McIsaacs, the coroner of Nelson County, for taking four slaves, part of the property devised as above; which slaves the declaration avers to be the property of the plaintiff, and to have been taken from his possession.

The defendant, in his plea, relies on an execution against William Higdon (the husband of said Catharine,) which came to his hands as coroner, and was levied on the slaves; and averring that they were the property of William Higdon, and as such, subject to levy and sale, prays for a return &c.

The plaintiff denied, in his replication, that the slaves were the property of William Higdon and subject to sale as such. And it was agreed that either party might give in evidence any special matter which could be pleaded.

On the trial, it was proved, on the part of the plaintiff, that about twenty years before the levy now in question, Cartmel had purchased one of these slaves, who was afterwards the mother of the others, and placed her in possession of Higdon, or his wife, then recently married; that they had returned annually to Cartmel's possession, for a day or two, during which he claimed them; and that on the 1st of January, 1835, having gone, on that day, from Higdon's house to the late residence of Cartmel, to attend his funeral, they were there seized by the coroner. The plaintiff also read a mortgage from Higdon to Cartmel, made in 1827, whereby these negroes and other property were conveyed by Higdon to Cartmel, to secure the payment, in one year, of a debt of one thousand dollars, alleged to be due; and it is provided that the property may remain in possession of Higdon, to be accounted for by delivering it to Cartmel if the debt should not be paid by the time stipulated.

As the acceptance of this mortgage was conclusive upon the mortgagee and those claiming under him, that Higdon had title at its date, no greater right than that of mortgagee could afterwards or now be asserted under Cartmel, unless his interest was enlarged by facts subsequent to the mortgage. The plaintiff, accordingly endeavored to prove that, by subsequent arrangement between Higdon and Cartmel, the latter had acquired the absolute title; while, on the other side, the defendant's evidence conduced in some degree to prove that, Higdon had acquired the absolute right; and also that the mortgage was fraudulent. But as it is not our purpose to detail the evidence or the facts inferrible from it, we proceed to notice such opinions of the Circuit Court as, being questioned by the assignment of errors, seem to require a formal statement and decision.

*First.* The first of these opinions, is contained in an instruction given, on motion of the plaintiff, as follows: " That if, in 1827, Higdon was indebted to Cartmel for complained of, either the possession, or the immediate right to it; consequently, where plaintiff claimed under a mortgage, and the evidence conduced to prove that the *mortgagor* held the possession by contract—instructions that, if the pltf. held a valid subsisting mortgage &c. the law was for him, were erroneous; because they did not submit the question of possession to the jury.

*Margin notes:*

Spring Term 1839.

McIsaacs
vs
Hobbs.

Facts proved upon trial.

Mortgagee, by accepting the mortgage, admits the mortgagor's title, and neither he nor any claiming under him, can assert any greater right, without showing that the mortgage title was subsequently enlarged.

The pltf. in replevin, to enable him to maintain the action, must have had, at the time of the taking

Spring Term
1839.

*McIsaacs*
vs
*Hobbs.*

money paid and advanced, and in order to secure him in the payment of the same, in good faith, he executed the mortgage, and the same was in due time legally recorded, and if Higdon never paid the said sum of money, and Cartmel never released the mortgage, the law was for the plaintiff:" which means of course, that if the facts included in the proposition be true, the jury must find for the plaintiff.

Conceding that this instruction should be construed, as intending that the indebtedness of Higdon to Cartmel, must have equaled the sum named in the mortgage, which is the more doubtful because the fact itself is not proved, and passing by the objection that the right of a mortgagee may be lost or divested otherwise than by his own actual release of it—it is obvious that the instruction disregards the question whether, at the time the negroes were taken, they were in the possession of the mortgagor, and if so, whether they were then, by any arrangement with the mortgagee, which may have deprived him, or those claiming under him, of the right of immediately re-taking the possession. And as the evidence conduced in some degree to prove that the mortgagor was in possession under such arrangement, the termination of which is uncertain; and as, moreover, it is a fundamental principle of this action that the plaintiff must, at the time of the taking, have had the possession, or the immediate right of possession, (1 *Chitty's Pleadings*, 187–8,) the instruction is clearly erroneous, either in assuming the fact that the mortgagee, or some one claiming under him, had the possession, or the immediate right of possession, which the Court had no right to assume, or in declaring that, whatever might be the fact in this respect, the plaintiff or mortgagee had a right to recover, which is incorrect in point of law.

The statute subjecting the interests of mortgagors to execution, makes no reference to the state of the possession at the time of the levy; and, as a levy on personal property implies But another and more important question, involving the construction and operation of the act subjecting the estate of a mortgagor to levy and sale under execution against him, arises upon this instruction, and is made in the argument before this Court. As the statute, in subjecting the title and interest of the mortgagor to levy and sale, in the same manner as if there were no mort-

gage, makes no reference to the state of the possession, the consequence is that, although the mortgagee be in the actual possession, or have the immediate right of possession, the officer having an execution against the mortgagor, may still make the levy, which, in the case of personal property, implies a seizure of it; and that being bound to sell the debtor's interest, he would be responsible for its production, and must therefore be entitled to the custody and control of it until the time of sale. It would certainly be inconsistent with this operation of the statute, to say that the mortgagee having the possession at the time of the levy, may, upon these facts alone, regain the possession by writ of replevin, and thus postpone or defeat altogether the effect of the execution. In a case where the levy recognizes the mortgage, and the property is seized avowedly for the mere purpose of selling the mortgagor's interest, according to the statute, the taking is clearly lawful, and this remedy, which lies only for an unlawful taking is of course inapplicable. Nor are we prepared to admit, that a mere failure of the officer to recognize the mortmortgage in making the levy, whether it arise from ignorance of its existence, or from doubt as to its validity—would constitute the seizure an unlawful taking, or prove it to be so. Whether a levy made in open defiance of the mortgage, and with the avowed intention of disregarding it in the sale, would be sufficient to authorize this proceeding before an attempt or offer to make the sale in that way, and what effect such an offer have in either of the preceding cases above might stated, need not be decided. For as the Court could not assume, from the evidence, either of these facts, and did not submit either of them to the jury, the instruction must be considered as asserting that the mere failure to recognize the mortgage in making the levy, rendered the seizure unlawful, and authorized this action. And in this respect, it was, in our opinion, erroneous.

While on this branch of the subject, it may be added that if, under any circumstances, the mortgagee, as such, would have the right to take the property from the officer by writ of replevin, between the levy and sale,

Spring Term
1839.

McIsaacs
vs
Hobbs.

that the officer takes possession of it, when an execution against a mortgagor is levied on the mortgaged property in possession of the mortgagee, the officer has a legal right to assume the possession & control of the property between the levy & sale; and the mortgagee cannot maintain replevin—which lies only for an *unlawful* taking—to regain the possession—thereby defeating or postponing the effect of the execution. And a failure of the officer to recognize the mortgage (because he did not know of it, or doubted its validity) it seems would not render the levy and seizure unlawful. If in any case where an ex'on against a mortgagor is levied on the mortgaged property, it can be taken from the officer, by replevin, by the mortgagee, the right is subject to this limitation—that it must be surrendered for the sale of the mortgagor's interest.

Spring Term 1839.

McIsaacs
vs
Hobbs.

A party who sets up title under a mortgagee, virtually admits, that, when the mortgage was made it was the only available title, (*vide sup.*) and, in such case, instructions predicated upon evidence of a previous absolute title —as they might mislead the jury —should not be given;

this right must be subject to the limitation, that the property is still subject, both before and after judgment, in the action of replevin, to be taken from his possession, for the purpose of a sale of the mortgagor's interest.

*Second.* The third instruction given on motion of the plaintiff, seems to apply exclusively to the effect which the possession of the negroes by Higdon, and the acts by which Cartmel asserted his claim to them, independently of the mortgage, might have, in subjecting them to, or exempting them from, liability to the creditors of Higdon, under the statute of frauds. And as the mortgage, for the reason before stated, superseded all question as to the effect of the previous facts upon that subject, the instruction is liable to the objection that, if it had been abstractly correct, it was inapplicable to any enquiry which was legitimately before the jury, and might have misled them. Our views of the law upon this particular subject having been expressed in the case of *McLaughlin's Heirs* vs. *Daniel,* decided at the present term, need not be here repeated.

The fact that advances by a father-in-law to his son-in-law, had been made a long time, & were not evidenced by any writing, might authorize a jury to presume that they were never intended to be repaid, and therefore insufficient to uphold a mortgage: but those facts do not of themselves create a presumption of law that the mortgage was satisfied.

A change of the date, and redelivery, of a mortgage, may convert it into a new deed.

*Third.* With respect to the second instruction asked for by the defendant, and which was refused by the Court, it is only necessary to say that, although the great lapse of time between the date of the advances made by Cartmel for Higdon and the execution of the mortgage, coupled with the fact that there was no written evidence of a debt, might authorize a jury to presume that they were not intended to be the foundation of a debt, and therefore, that they could not be brought up as a consideration to support the mortgage against creditors, those facts do not, as this instruction assumes, create a presumption of law, that Higdon had repaid the advances, and the Court properly refused to instruct the jury that, upon those facts alone, they should find for the defendant. The third instruction moved by the defendant, seems to deny that a mortgage once executed, may be surrendered, and by an alteration of the date and a redelivery of the same writing, become in effect a new deed, taking date for all purposes from this second delivery; and if so, it was properly overruled.

*Fourth.* We perceive no material error in the opinions

of the Court in regard to the admission and rejection of evidence. The release attempted to be set up by the defendant, was not proved to have come to the possession of the plaintiff or his *cestui que trust*; nor was any fact proved from which it should be presumed that, if it was. in existence, it either did or ought to have come to their hands; and therefore, the notice to the plaintiff to produce it, at whatever time given, was insufficient to authorize parol proof of its contents. The presumption is that, if such a paper existed, it came to the hands of Higdon's personal representative.

*Fifth.* As the verdict must be considered as being infected by the errors above noticed, in the instructions of the Court, and as it is certainly not supported by any conclusive evidence, it is unnecessary to enquire whether it is contrary to the evidence. But for the errors above referred to, the judgment is reversed, and the cause remanded for a new trial, in conformity with this opinion, and without payment of costs.